KOLAND, INC., a North Dakota Corporation, Plaintiff and Appellee,

v.

Robert V. HANGGI, Defendant and Appellant.

Civ. No. 10 140.

Supreme Court of North Dakota.

June 10, 1982.

Kenner, Halvorson & Sturdevant, Minot, for plaintiff and appellee; argued by Harris P. Kenner, Minot.

Price & LaQua, Langdon, for defendant and appellant; argued by Robert Q. Price, Langdon.

SAND, Justice.

This is an appeal by the defendant, Robert E. Hanggi [Hanggi], from a district court judgment entered in favor of the plaintiff, Koland, Incorporated [Koland], for the balance due on a contract for the purchase and erection of a steel building ($10,492.09) less the amount required to make certain repairs to the building ($1,255.00).

On 3 October 1973 Hanggi executed an order with Koland through a salesman, Jack Stewart, for the purchase and erection of a steel building. The original order was for a 50′ × 72′ building for a total purchase price of $11,000.00. On 16 October 1973 Hanggi executed an order for a 24′ extension to the building for an additional $4,300.00. Hanggi executed another order in April 1974 for the purchase and installation of windows in the building for an additional $1,192.09. The total purchase price for the 50′ × 96′ building was $16,492.09, with a down payment of $1,000.00. The purchase price included a concrete slab for the floor of the building. Hanggi made an additional $5,000.00 payment on the purchase price sometime in 1974.

A concrete floor for the building was poured in November 1973 and construction on the actual building began in the spring of 1974. After the building was completed, Hanggi refused to pay the balance due ($10,492.09) because of certain alleged defects in the construction of the building

and, in particular, because the concrete floor was not properly sloped to accommodate drainage specifications he asserted he had requested.

Hanggi asserted that he informed Stewart the building was intended to be used as both a repair shop for his trucks and to wash the ice and salt off the trucks which accumulated as a result of hauling grain from Cavalier County, North Dakota, to Duluth, Minnesota. Hanggi also asserted that because of this intended use of the building, he informed Stewart that the concrete floor of the building would have to be sloped to accommodate the drainage. Hanggi further asserted that he showed Stewart a drawing indicating the drain location, slope, and gradient, and that prior to pouring the floor, he (Hanggi) gave that drawing to the concrete foreman and provided the materials for the drains.

The metal building was divided into two distinct areas, a shop area and a storage area. Hanggi provided his own drains for the building and one drain was set in the shop area and one drain was set in the storage area. There was limited drainage in the areas immediately surrounding each of these drains; however, the whole slab was not sloped so as to allow drainage of the whole floor into these two drains. The record reflects that, within allowable construction tolerances, the floor was level and not sloped.

Koland asserted that the contract for the building was for a flat floor and it was not informed by Hanggi that the intended use of the building was to wash salt from his trucks. Rather, Koland contended that Hanggi informed its representatives that the building was to be used as a garage and no mention was made of drainage specifications.

Hanggi made several other complaints concerning the building. These complaints, among other things, involved leakage into the building at the base of the wall panels, problems with a sliding door, a hole in the corner of the roof, three panels which were of shorter length than required, and a cracked concrete ramp. Koland in essence admitted these defects and calculated the cost necessary to repair them at $1,255.00. However, that figure did not include a cost for sloping the floor to accommodate drainage, because Koland asserted that the contract included a flat slab and the work slab was within normal construction tolerances.

The case was tried to the court without a jury, and the district court entered findings of fact, conclusions of law, and order for judgment and judgment in favor of Koland for the amount due under the contract ($10,492.09), less an offset to Hanggi for the defects admitted by Koland ($1,255.00). Hanggi appealed to this Court.

The issues raised by Hanggi relate to whether or not the contract between Koland and him included the construction of a floor that complied with the drainage specifications he allegedly requested.

Hanggi contended the terms of the contract included an obligation on the part of Koland to provide drainage for the concrete floor and that Koland breached that contractual obligation. Koland asserted that the parties' contract did not include construction of a floor which complied with Hanggi's drainage specifications.

The district court made the following findings of fact pertinent to the resolution of this issue:

"VI

"That the concrete slab floor did not properly drain water as expected by Defendant, however, there was no obligation on Plaintiff to provide such floor drainage for use of the building as intended by Defendant.

"VII

"That such design would have significantly increased the cost and was not contracted for or implicitly agreed upon.

"VIII

"That Defendant did the site preparation work for the slab and provided his own floor drains which were not adequate for his anticipated use.

"IX

"Conversations between salesman Jack Stewart and Defendant regarding the floor drains do not rise to the level of a verbal contract to guarantee the floor drainage that Defendant now expects.

"X

"That certain defects have been acknowledged by Plaintiff (Exhibit 9) and it must repair them or pay to Defendant the sum of One Thousand Two Hundred Fifty-five and No/100th Dollars ($1,255.00); that other than these repairs, Plaintiff has fulfilled the express terms of the construction agreement."

Hanggi contended that these findings were not supported by the evidence or were irrelevant.

The record reflects that the only written documents evidencing an agreement between the parties were the three written orders (invoices).[1] These orders did not include any specifications for the concrete floor. Rather, discussions, if any, relative to the specifications for the concrete floor were oral and were not evidenced by a written document.

In *Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417, 422 (N.D.1979), we said:

"Obviously, however, the terms of an oral contract can be established only through extrinsic evidence. A determination of these terms, if they are disputed, must therefore be made by the trier of fact, and will be reversed by this court on appeal only if 'clearly erroneous.' After the terms of the oral contract have been determined, the issue of the parties' intentions, if ascertainable from those terms, involves a question of law for the court to decide, and will be reversed by this court on appeal if erroneous. Yet, if the parties' intentions are not ascertainable from the terms of the oral contract and must therefore be established by extrinsic evidence, the question once again becomes one for the trier of fact and this court will reverse on appeal only if 'clearly erroneous.' "

The evidence regarding the conversation between Hanggi and Stewart concerning drainage of the concrete floor was conflicting. Hanggi testified that he discussed drainage with Stewart and that their agreement included specified drainage requirements. Hanggi further testified that he prepared, and attempted to give Stewart, a drawing indicating the drainage requirements and that Stewart told him to give the drawing to the concrete crew. Stewart testified that he did not recall a discussion concerning any drawings; however, he did recall a brief conversation regarding one drain in the shop area of the building which Hanggi indicated he would provide.

The testimony of Darrell Schrader, a building contractor, reflects that the two drains provided by Hanggi were designed for draining a small area and were inadequate to drain the entire floor. In order to drain the entire floor, larger and more expensive drains were required.

■ These factors all militate in favor of the trial court's findings that the terms of the contract did not include the specified drainage requirements alleged by Hanggi and are not clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure.

Hanggi also asserted that the building as constructed by Koland did not fulfill the implied warranty of fitness applicable to the transaction. Hanggi asserted that the facts of this case meet the requisites of implied warranty as set forth in *Dobler v. Malloy*, 214 N.W.2d 510 (N.D.1973).[2]

1. These documents indicate that a contract for sale was made between the parties and to that extent satisfy the statute of frauds (NDCC § 41-02-08) even though part of the contract was for the rendition of services. See discussion of applicability of Article 2 of Uniform Commercial Code to mixed "goods" and "services" contract in *Air Heaters, Inc. v. Johnson Electric, Inc.*, 258 N.W.2d 649 (N.D.1977).

2. Hanggi also cited *Air Heaters, Inc. v. Johnson Electric, Inc.*, 258 N.W.2d 649 (N.D.1977). See footnote 1.

In *Dobler v. Malloy, supra* at 516 we adopted the following test for the application of the doctrine of the implied warranty of fitness for the purpose:

"... (1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of work contemplated; (3) furnishes no plans, designs, specifications, details, or blueprints; and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended."

■ Whether or not the implied warranty of fitness is present in a particular case is a finding of fact. *Air Heaters, Inc. v. Johnson Electric, Inc.*, 258 N.W.2d 649 (N.D. 1977).

In this instance the district court made the following conclusion of law:

"I

"That the Doctrine of Implied Warranty of Fitness does apply to construction contracts in this state but has no application to the facts of this case as to drainage because the contractor did not agree to construct a slab floor meeting the special drainage requirements that are admittedly now lacking if the building is to be used as Defendant intends; the floor was adequately built to accommodate the usual intended purposes and was of fit construction by usual and accepted standards."

■ Labels placed on findings by the trial court are not conclusive. *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972).

■ In this instance the finding that the doctrine of implied warranty of fitness did not apply to the facts of this case was a finding of fact, and after applying Rule 52(a), N.D.R.Civ.P., that finding of fact is not clearly erroneous.

The next issue raised by Hanggi is whether or not Koland substantially performed under the construction contract.

The trial court found that other than the repairs for which setoffs were allowed, Koland fulfilled the express terms of the construction agreement.

In *City of Granville v. Kovash, Inc.*, 118 N.W.2d 354, 358 (N.D.1962), this Court defined substantial performance to mean:

"... that the contractor has endeavored to perform the provisions of the contract in good faith, and that he has in fact done so, except as to unimportant omissions or deviations which are the result of mistake or inadvertence and which were not intentional. It contemplates the performance of every important part of the contract."

■ Whether or not a contractor has substantially performed under a construction contract is a question of fact and will not be reversed by this Court unless clearly erroneous. *Dittmer v. Nokleberg*, 219 N.W.2d 201 (N.D.1974).

■ The record supports the trial court's finding that Koland fulfilled the express terms of the construction agreement except as to those items for which a setoff was allowed and, accordingly, pursuant to Rule 52(a), N.D.R.Civ.P., the trial court's finding is not clearly erroneous.

For reasons stated in this opinion the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.